Ramon Lopez (CA State Bar #86361)
rlopez@lopezmchugh.com
Jason Ochs (CA State Bar #232819)
jochs@lopezmchugh.com
Lopez McHugh, LLP
100 Bayview Circle, Ste. 5600
Newport Beach, CA 92660
Telephone: 949.737.1501
Facsimile: 949.737.1504

William Audet (CA State Bar #117456)
waudet@audetlaw.com
Jason T. Baker (CA State Bar #212380)
jbaker@audetlaw.com
AUDET & PARTNERS, LLP
221 Main Street, Suite 1460
San Francisco CA 94105
Telephone: 415.982.1776
Facsimile: 415.568.2556

*Co-Lead Counsel for Plaintiff
and the Proposed Class
(Additional Counsel on Signature Page)*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| Jason M. Yamada, D.D.S., on behalf of himself and others similarly situated, | No. _____  **CV10-04849 JHN(PLAX)** |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF, DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION** |
| v. | |
| Nobel Biocare Holding AG; Nobel Biocare AB Nobel Biocare USA, LLC. and DOES 1 through 10, | **JURY TRIAL DEMANDED** |
| Defendants | |

## NATURE OF THE CASE

1.     Defendants in this case manufacture, sell and distribute seriously defective dental implants.  Unlike many other dental implants, NobelDirect implants are marketed to general dentists for restorative functional and cosmetic use in the "smile zone" of the patient in an attempt for NobelDirect to expand beyond customary dental implantologists and break into the lucrative general dentistry market.

2.     NobelDirect dental implants have a unique and patented One-Piece, Tapered design that not only fails to correct the dental issues for which they are implanted, but also causes complications including bone loss, bone resorption, lack of implant osseointegration, gingival retraction, gingival pitting with metallic discoloration and/or failed and failing implants.

3.     Because they are the result of the defective design the complications occur regardless of the training, experience and level of skill of the implanting dentist.

4.     These complications, and the failure of the implants to work properly for their intended purpose, leads dentists no choice but to perform  surgery themselves to remove  the NobelDirect implants, or to refer patients to a surgical specialist to remove  the implants.

5.      The insertion of an ineffective, defective and damaging dental implant leads to disappointed, concerned and questioning patients who have suffered injury due to the placement and subsequent failure of a NobelDirect implant. These patients have sought and will continue to seek redress and dental restoration from the dentists who performed the original implant surgery.

6.      The proposed class in this case is comprised of dentists throughout the United States who implanted NobelDirect implants.

7.      The proposed class of dentists did not know, and had no way of knowing, that the NobelDirect implants were defectively designed, that incorrect insertion protocols were promoted, that they would damage their patients and would need to be surgically removed.

8.      Despite the fact that they were sold a defective product by Nobel, the Dentists need to address the needs of their patients and mitigate the harm that the implants have caused and will cause to their patients, and mitigate the loss of goodwill to their dental practices caused by the placement of the defective implant. They must do this by removing the implants themselves or referring their patients to a dental surgeon for restoration of the failed or removed implant with a two-piece implant with newly fabricated crown, often covering all or part of the costs of these procedures themselves.

9.      It is neither practical nor efficient for each dentist who implanted the defective NobelDirect implants to sue the Nobel defendants for damages and indemnity for the repair and restoration required and necessary for each patient who already has injury because of the implant's defects, and every patient whose NobelDirect injury inevitably arises in the future.

10.     Plaintiff, on behalf of himself and a class of dentists similarly situated, asks the Court for declaratory relief, in the form of a declaration that NobelDirect implants were defectively designed, that they cause certain injury in patients, including the need for the implants to be removed, and that Plaintiff and the Class are entitled to indemnification and reimbursement of all damages incurred as a consequence of such removals.

11.     Plaintiff additionally asks the Court to declare that Defendants breached implied and express warranties, fraudulently misrepresented their products, and engaged in unfair business practices.

## PARTIES

12.     Plaintiff Jason M. Yamada, D.D.S., is a citizen of California with his principal place of business in Torrance, California.  Dr. Yamada attended a NOBEL promotional symposium in 2004 and, subsequently, Dr. Yamada implanted dozens of NobelDirect dental implants between 2004 and 2005.  At least a dozen of Dr. Yamada's patients have had implants that have failed or are failing,

1    requiring his patients to undergo surgical removal of the implants, reconstruction,

2    replacement, and continued monitoring.  In order to mitigate damage to his

3

4    patients' health and welfare and to mitigate damage to his dental practice's

5    goodwill, Dr. Yamada has repaired and will repair the damage free of charge,

6

7    including paying out of pocket for expenses and staff and professional time

8    involved with the repair procedures.

9

10       13.       Defendant Nobel Biocare Holding AG is a limited liability company

11   incorporated under the laws of Switzerland with its principal place of business in

12   Zurich, Switzerland.

13

14       14.       Defendant Nobel Biocare AB is a limited liability company

15   incorporated under the laws of Sweden with its principal place of business in

16   Gothenburg, Sweden.

17

18       15.       Defendant Nobel Biocare USA, LLC is a limited liability company

19   incorporated under the laws of the State of Delaware with its principal place of

20   business in Yorba Linda, California. Upon information and belief, relevant

21   decisions to market the NobelDirect Implant to General Dentists, and to conceal

22

23   the fact that the NobelDirect implants were defective, were made in California by

24   agents and employees of Nobel Biocare USA, LLC.

25

26       16.       Defendants are collectively referred to herein as "NOBEL."

27

28

17.    NOBEL concentrates on the development, production and marketing of dental implants, crowns and bridges as well as veneers and laminates as dental prostheses.

18.    NOBEL has four production centers in Sweden and the USA and its own sales organizations in 33 countries.

19.    NOBEL has a world market share of approximately 35 percent for dental implants.

20.    At all times relevant to this action, NOBEL was engaged in the business of designing, licensing, manufacturing, distributing, selling, marketing and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, the dental implant known as and sold under the trade name NobelDirect.

21.    NobelDirect is a titanium single-piece dental implant.

22.    NobelDirect was launched in 2004 and sold to practitioners in the United States.

23.    The implant was designed to be screwed directly into the jawbone without having to first retract the gingival covering the alveolar crest bone.

24.    NOBEL marketed the Nobel Direct as a dental implant that was easy to install for the practitioner and therefore suitable for any dentist.

Class Action Complaint

## JURISDICTION AND VENUE

25.     This is a class action.

26.     Members of the proposed Plaintiffs' class are citizens of California and other states different from the home state of Defendants.

27.     Upon information and belief, the aggregate claims of individual Class Members exceed $5,000,000, exclusive of interest and costs.

28.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332(d).

29.     Defendants, through their business of manufacturing, distributing, selling, and leasing NobelDirect implants to and in California have established sufficient contacts in this district such that they are subject to personal jurisdiction here.  Defendants are deemed to reside in this district pursuant to 28 U.S.C. §1391(a).

## APPLICABLE LAW

30.     California State law applies to all claims in this action.

## ALLEGATIONS

31.     The NobelDirect implant was launched in 2004.  It was claimed by Nobel to be simple to use by nonspecialist dentists and to result in essentially no incidence of "bone reabsorption", where an implant is reabsorbed by the patient's

bone.   The implant is recommended by defendants for placement without the need for a surgical flap, followed by immediate loading of the implant.

32.      When implanted as directed, the long, narrow, non-linear tapered design of the implant leads to an excessively high amount of marginal bone loss surrounding the implant. This occurs as a result of the defective design of the implant, and is not a result of dentist-specific causes.

33.      One study has concluded that after approximately one year, over 10% of NobelDirect implants placed had already completely failed- i.e. they had to be entirely removed from the patient's jaw.  This study did not take into account the number of implants that had serious complications but that had not yet been removed.

34.      Another study entitled "Short-term clinical results for NobelDirect implants: a retrospective multicentre analysis" found "extensive marginal bone loss" in more than 1/3 of the NobelDirect implants evaluated.  The study concluded that NobelDirect implants had "a poor clinical outcome" when implanted as directed.

**Nobel Had Exclusive Knowledge Of The Defect.**

35.      All of NobelDirect implants have the same defective design.

36.      NOBEL had superior and exclusive knowledge of the defect, and knew that the defect was not known or reasonably discoverable by the Plaintiff and

Class members prior to their purchase and/or implantation of the NobelDirect implants.

37.     Only NOBEL had access to information about the risk of implanting the NobelDirect implants, including the dangers of implanting as directed: loaded directly without using surgical flaps.

38.     NOBEL failed to disclose, at and after the time of purchase, that the NobelDirect implants were defective and not fit for their intended purpose.

39.     Each NobelDirect implant comes in an identical sealed tube with labeling on the outside.  NOBEL has placed warning or instruction labels (for various reasons), in the form of a sticker, on such tubes for *other* NOBEL implants, but at no time did NOBEL place any sticker or language warning plaintiff or members of the proposed class that the NobelDirect implants were defective, that they had been found to have an extraordinarily high rate of failure, that they should not be loaded directly nor implanted without the use of surgical flaps, that they had not been adequately tested and/or that the implant was a prototype.

40.     Each package label was defective and contained material omissions, including that they:

        a.  Failed to warn of the increased risk of implant failure due to the increased, non-linear tapered implant design causing increased surrounding bone wall compression pressures at the time of insertion;

b. Failed to warn of the increased risk of implant failure from over-torquing the implant at the time of insertion;

c. Failed to warn of increased risk of implant failure from heat transfer during abutment grinding down the implant body to surrounding bone wall;

d. Failed to warn of the increased risk of the use of flapless surgery for insertion of the implant;

e. Failure to warn of the increased risk of implant failure due to conducted vibrations down the body of the implant during abutment grinding causing micromotion of the implant against the surrounding bone;

f. Failure to warn of the increased risk of implant failure due to the immediate functional loading of the implant;

g. Failure to warn of the increased risk of implant failure due to increased marginal bone loss surrounding the implant;

h. Failure to warn of the increased risk of cosmetic failure due to gingival retraction;

i. Failure to warn of the increased risk of cosmetic failure from metallic discoloration of the gingival tissue;

Class Action Complaint

    j.  Failure to warn of an overall unacceptable and abnormally high failure rate.

41.    Whether a dental implant will work for its intended purposes, and whether, when implanted as directed, it will have an extraordinarily high risk of bone resorption and failure is a fact that would be considered material by a dentist in deciding whether to purchase or use a dental implant.

42.    Had Plaintiff and other class members known of the implant's defect, they would not have purchased or implanted the NobelDirect implants.

43.    Plaintiff and the class further expect and assume Defendants will not sell implants with known defects, and will immediately and properly disclose any such defect to its dentists when they learn of the defect.

44.    Plaintiff and the class expect and trust that Defendants will properly design their implants and will effectively train dentists in how to surgically implant the implants in order to avoid the risk of bone reabsorption and other complications that will result in the failure and removal of the implant.

45.    Plaintiff and the class relied on NOBEL's representations that the NobelDirect implants could be implanted safely and effectively – even by general (nonspecialist) dentists -- without surgical flaps.

**Nobel Has Misled Dentists Regarding the Implant's Effectiveness and Defects**.

---

11

**Class Action Complaint**

46. NOBEL has actively concealed the implant defect from Plaintiff and Class members.

47. Upon information and belief, NOBEL failed to release internal information regarding the NobelDirect's propensity to cause abnormally high rates of bone resorption with gingival retraction and discoloration and other complications leading to implant failure. This deception and withholding of internal information, complaints and testing continue to the present day.

48. NOBEL marketed the NobelDirect implants as safe and effective for use by general, non-specialist dentists without resorting to a surgical flap instead promoting the use of an easier gingival punch insertion site. This marketing was knowingly and intentionally false, and was intended to deceive general dentists into believing this implant was a simple effective tool they could incorporate into their practices, when in fact it was a dangerously defective implant that would soon have to be removed.

49. As a result of NOBEL'S practices, Plaintiff and Class members purchased and implanted the NobelDirect implants which they otherwise would not have purchased. Because of NOBEL'S practices, Plaintiff and the class members now face a flood of complaints from injured dental patients who have needed, and will need, immediate intervention to remove the defective implants.

///

## CLASS ACTION ALLEGATIONS

50.        Plaintiff brings this action on behalf of themselves and a class of persons similarly situated as members of a proposed Plaintiff Class pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3).  The action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of those provisions.

51.        The Class is initially defined as follows:

> All dentists in the United States who have implanted
>
> NobelDirect implants.

> Excluded from the Class are NOBEL; any affiliate, parent, or subsidiary of NOBEL; any entity in which NOBEL has a controlling interest, any officer, director, or employee of NOBEL; any successor or assign of NOBEL; anyone employed by counsel for Plaintiff in this action; and any Judge to whom this case is assigned as well as his or her immediate family.

52.        Claims for personal injury are specifically excluded from the class.

53.        <u>Numerosity</u>: NOBEL has sold thousands of NobelDirect implants in the United States, a substantial portion of those occurring in California.  Class

1  members number in the thousands, and are far too numerous to be individually

2  joined in this lawsuit.

3

4      54.      Existence and Predominance of Common Questions: Common

5  questions of law and fact exist as to all members of the class and predominate over

6  questions affecting only individual class members. These common questions

7  include the following:

8

9          a.  whether NobelDirect implants were defectively designed;

10

11         b.  whether NOBEL knows about the defect and, if so, how long NOBEL

12             has known of the defect;

13

14         c.  whether the defective nature of the NobelDirect implant constitutes a

15             material fact to the reasonable objective consumer (i.e. the dentists);

16

17         d.  whether NOBEL has and had a legal duty to disclose the defective

18             nature of the implants to Plaintiff and Class members;

19

20         e.  whether NOBEL breached implied or expressed warranties;

21         f.  whether NOBEL has engaged in unfair or fraudulent business

22             practices in violation of Business and Professions Code section 17200

23             *et seq.,* as alleged in this complaint;

24

25         g.  whether Plaintiff and the other class members are entitled to equitable

26             relief, including but not limited to a preliminary and/or permanent

27             injunction or declaratory relief.

28

55.    Typicality: Plaintiff's claims are typical of the claims of the class, because, among other things, Plaintiff purchased and implanted NobelDirect implants which contain the same defect found in all other NobelDirect implants.

56.    Adequacy:  Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the members of the class he seeks to represent.  Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously. The interests of members of the class will be fairly and adequately protected by Plaintiff and his counsel.

57.    Superiority: The class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each class member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against NOBEL economically feasible. Even if class members themselves could afford such individualized litigation, the court system could not. In addition to the burden and expense of managing myriad actions arising from the implant defect, individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, the class action device presents far

fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

58.    In the alternative, the class may be certified because:

    a.    the prosecution of separate actions by the individual members of the class would create a risk of inconsistent or varying adjudication with respect to individual class members which would establish incompatible standards of conduct for NOBEL;

    b.    the prosecution of separate actions by individual class members would create a risk of adjudication with respect to them which would, as a practical matter, be dispositive of the interests of other class members that are not parties to the adjudication, or substantially impair or impede their ability to protect their interests; and

    c.    NOBEL has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final and injunctive relief with respect to the members of the class as a whole.

## FIRST CLAIM FOR RELIEF

### (Declaratory Relief)

59.    Plaintiff re-alleges and incorporates herein by reference Paragraph 1 through Paragraph 58 as if fully set forth.

60.     Defendant NOBEL Defendants designed, developed, tested, manufactured, distributed, marketed, promoted, instructed and sold the NobelDirect implants to Plaintiff and the class.

61.     Plaintiff and the class had no knowledge, and no effective way to know, that the NobelDirect implants were defectively designed with incorrect insertion protocols promoted, would cause damage to their patients, and would fail, requiring surgical removal from the patients' jaws.

62.     Plaintiff and the class have had complaints from patients who have been the victims of NobelDirect implants.  These patients have complained and sought help from plaintiff and the class – i.e. their dentists – and they will continue to do so as the NobelDirect implants continue to fail and require removal.

63.     Plaintiff and the Class cannot afford to simply ignore their patients' complaints of failed or failing implants, refuse treatment or remedy, and refer those patients to NOBEL for redress for their injury.  To do so would mean catastrophic injury to their dental practices and the reputation and word-of-mouth which are critical to the dental practices of Plaintiff and the Class.  It would also mean abandoning their duty of care to their patients, and failing to prevent further damage caused by the defective implants.

64.     Instead, Plaintiff and the class, in order to mitigate the damage to the health and welfare of their patients, to fulfill their duties and obligations as the care

provider for their patients, and to mitigate damage to their own practice, must help patients cure or stop the damage inflicted by the defective implant, including by removing the implant or by referring patients to another dentist who can remove the implant, and paying for the costs associated with that procedure and additional procedures required for restoration.

65.     Plaintiff, on behalf of himself and the proposed class, seeks declaratory relief from the Court including in the form of a declaration that NobelDirect implants are defectively designed, that they lead to extraordinary bone resorption and/or consequential failure of implants that requires removal, that Plaintiff and the Class are not liable for this defect, and they are entitled to full indemnification from NOBEL for any time and expense lost as a consequence of this defect.

## SECOND CLAIM FOR RELIEF

### (Implied Indemnity)

66.     Plaintiff re-alleges and incorporate herein by reference Paragraph 1 through Paragraph 65 as if fully set forth.

67.     Defendant NOBEL designed, developed, tested, manufactured, distributed, marketed, and sold the NobelDirect implants for sale to Plaintiff and the class.

68.     Plaintiff and the class had no knowledge, and no effective way to know, that the NobelDirect implants were defectively designed, would cause damage to their patients, and would fail, requiring surgical removal from the patients' jaws.

69.     Because manufacturers are held strictly liable for design defects, Plaintiff, on behalf of himself and the proposed class, seeks indemnity from NOBEL, the manufacturer, for damages Plaintiff and the class have suffered and will suffer as a consequence of NOBEL'S defectively designed implant.

## THIRD CLAIM FOR RELIEF

### (Breach of Express Warranty)

70.     Plaintiff re-alleges and incorporate herein by reference Paragraph 1 through Paragraph 69 as if fully set forth.

71.     Defendants designed, developed, tested, manufactured, distributed, marketed, and sold the NobelDirect implants for sale to Plaintiff and the class.

72.     Defendants included an express warranty that was relied upon by Plaintiff and class members in selecting the NobelDirect implants.

73.     Defendants provided a defective product and failed to properly inspect, test, and identify the implant's defects.

74.      But for Defendants' conduct alleged herein and their breach of express warranty, Plaintiff and the Class would not have suffered the damages and losses alleged herein.

75.      As a direct and proximate result of Defendants' breach of express warranty, the Plaintiff and the Class have sustained, are sustaining, and will sustain damages and losses as alleged herein.

## FOURTH CLAIM FOR RELIEF

### (Breach of Implied Warranty)

76.      Plaintiff re-alleges and incorporates herein by reference Paragraphs 1 through Paragraph 75 as if fully set forth.

77.      Defendants designed, developed, tested, manufactured, distributed, marketed, and sold the NobelDirect implant for sale to Plaintiff and the class.

78.      Defendants impliedly warranted that the NobelDirect implants were properly designed, developed, tested, manufactured, distributed, marketed, and sold and that the designs and materials were proper and of first-class and workmanlike quality.

79.      Plaintiff and the Class relied upon said warranties and believed that said designs, work, and materials were of first-class workmanlike quality and fit

for the intended use and purpose of a consumer vehicle to be driven with no

geographic or weather restrictions.

80.     Defendants breached said warranty by designing, developing,

manufacturing, distributing, marketing, and selling the NobelDirect implants,

which were defective and not fit for their intended use.

81.     Defendants provided defective implants and failed to properly inspect,

test, and identify the NobelDirect implant's defects.

82.     But for Defendants' conduct alleged herein and their breach of implied

warranty, Plaintiff and the Class would not have suffered the damages and losses

alleged herein.

83.     As a direct and proximate result of Defendants' breach of implied

warranty, the Plaintiff and the Class have sustained, are sustaining, and will sustain

damages and losses as alleged herein.


## FIFTH CLAIM FOR RELIEF

### (Unfair Business Practices: Violation California

### Bus. & Prof. Code §§ 17200, *et seq).*


84.     Plaintiff, on behalf of himself and all others similarly situated,

realleges as if fully set forth, each and every allegation set forth herein.  NOBEL'S

acts and practices, as alleged in this complaint, constitute unfair and/or fraudulent

business practices, in violation of the Unfair Competition Law, Cal. Bus. & Prof.

Code § 17200, *et seq.*

85.    California Business and Professions Code § 17200, *et seq* prohibits

acts of "unfair competition," which includes any "unfair" business practices.

86.    NOBEL engaged in unfair business practices by failing to disclose to

Plaintiff and the Class the defects inherent in the NobelDirect implants, and,

among other things:

     a.  Engaging in conduct where the utility of that conduct is outweighed

        by the gravity of the consequences to Plaintiff and other members of

        the class;

     b.  Engaging in conduct that is immoral, unethical, oppressive,

        unscrupulous, or substantially injurious to Plaintiff and other members

        of the class

87.    As a direct and proximate result of NOBEL'S unfair business

practices as alleged herein, Plaintiff and Class members have suffered injury in fact

and lost money or property, in that they purchased implants that they otherwise

would not have.  Plaintiff and Class members have also suffered damages as a

consequence of NOBEL'S unfair conduct, including that they have had to conduct

implant removals and pay for incidental expenses, or pay for patients' removals by

other practitioners, in order to mitigate damage to the health and well being of their patients and the further loss of goodwill to their business.

88.     Meanwhile, NOBEL has sold more implants than it otherwise could have, unjustly enriching itself thereby.

89.     Plaintiff and Class members are entitled to equitable relief, including restitutionary disgorgement of all profits accruing to NOBEL because of its unfair, fraudulent, and deceptive practices, and declaratory relief, and a permanent injunction enjoining NOBEL from its unfair, fraudulent and deceitful activity.

## SIXTH CLAIM FOR RELIEF

### (Fraudulent Business Practices: Violation California

### Bus. & Prof. Code §§ 17200, *et seq).*

90.     Plaintiff, on behalf of himself and all others similarly situated, realleges as if fully set forth, each and every allegation set forth herein.  NOBEL'S acts and practices, as alleged in this complaint, constitute fraudulent business practices, in violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*

91.     California Business and Professions Code § 17200, *et seq* prohibits acts of "unfair competition," which includes any "fraudulent" business practices.

Class Action Complaint

92.     NOBEL engaged in fraudulent business practices by engaging in conduct that was and is likely to deceive a reasonable consumer.

93.     Plaintiff and the Class reasonably expected the NobelDirect implants to be free of serious defects.  They also reasonably expected that, when implanted as directed, the implants would be safe and effective.

94.     In failing to disclose the defects in the NobelDirect implants at the time of sale, and in giving the false impression that the implants were safe and easy for general dentists to implant without a surgical flap, NOBEL knowingly and intentionally and repeatedly concealed material facts and breached their duty not to conceal facts.

95.     As a direct and proximate result of NOBEL'S fraudulent practices, Plaintiff and the Class have suffered and will continue to suffer damages.

96.     NOBEL has been unjustly enriched and should be required to make restitution to Plaintiff and the Class pursuant to California Business and Professions Code Sections 17203 and 17204, and should further be require to indemnify Plaintiff and the class against damages claimed by patients whose implants have failed due to the defective nature of the implant.

## **PRAYER**

WHEREFORE, Plaintiff, on his own behalf and on behalf of the Class, prays for judgment as follows:

a. For an order certifying the Class and appointing Plaintiff and his counsel to represent the Class;

b. For an Order Declaring NOBEL liable for the defects in their NobelDirect implant and requiring NOBEL to indemnify Plaintiff and the Class for all damages suffered as a consequence of the defective implants;

c. For an order awarding compensatory damages to the Plaintiff and the class;

d. For an order awarding Plaintiff and the members of the Class restitution, or other equitable relief as the Court deems proper;

e. For an order enjoining NOBEL from continuing to engage in unfair business practices, as alleged herein, including precluding the further sale of NobelDirect implants;

f. For an order awarding Plaintiff and the members of the Class pre-judgment and post-judgment interest;

g. For an order awarding Plaintiff and the members of the Class reasonable attorneys' fees and costs of suit, including expert witness fees; and

///

///

///

**Class Action Complaint**

1    h. For an order awarding such other and further relief as this Court may

2    deem just and proper.

3

4

5    DATED: June 30, 2010                    By: _____

6                                            Ramon Lopez
                                             Jason Ochs
                                             Lopez McHugh, LLP
7                                            100 Bayview Circle, Ste. 5600
                                             Newport Beach, CA 92660
8                                            Telephone: 949.737.1501
                                             Facsimile: 949.737.1504

9                                            William M. Audet
                                             Audet & Partners LLP.
10                                           221 Main Street, Suite 1460
                                             San Francisco CA 94105
11                                           Telephone: 415.982.1776
                                             Facsimile: 415.568.2556

12                                           Stephen D. Ochs, M.D., J.D.
13                                           805 South Reserve St.
                                             Missoula, MT 59801
14                                           Telephone: 406.549.6600
                                             Facsimile: 406.549.1511

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Jacqueline Nguyen and the assigned discovery Magistrate Judge is Paul Abrams.

The case number on all documents filed with the Court should read as follows:

## CV10- 4849 JHN (PLAx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===============================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] Western Division | [ ] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Name & Address: Ramon Lopez (CSB No. 86361)
Jason Ochs (CSB No. 232819)
Lopez McHugh LLP
100 Bayview Circle Suite 5600
Newport Beach, California 92660
P: 949.737.1501

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jason M. Yamada, D.D.S., on behalf of himself and others similarly situated,<br><br>PLAINTIFF(S)<br>v.<br><br>Nobel Biocare Holding AG; Nobel Biocare AB; Nobel Biocare USA, LLC. and DOES 1 through 10<br><br>DEFENDANT(S). | CASE NUMBER<br><br>**CV10-04849 JHN(PLAX)**<br><br><br>**SUMMONS** |

TO:    DEFENDANT(S): _____

_____

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, _Ramon Lopez, Lopez McHugh LLP___, whose address is _100 Bayview Circle Suite 5600, Newport Beach, California 92660_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: __JUN 30 2010__          By: _____

Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| | |
|---|---|
| **I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)<br>Jason M. Yamada, D.D.S., on behalf of himself and others similarly situated, | **DEFENDANTS**<br>Nobel Biocare Holding AG; Nobel Biocare AB; Nobel Biocare USA, LLC. and DOES 1 through 10, |
| **(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>Ramon Lopez, Jason E. Ochs<br>Lopez McHugh LLP, P: 949.737.1501<br>100 Bayview Circle Suite 5600, Newport Beach, CA 92660 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☑ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify):    ☐ 6 Multi-District Litigation    ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes    ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes    ☐ No    ☑ **MONEY DEMANDED IN COMPLAINT:** $ >$5,000,000.00

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☑ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **IMMIGRATION** | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus- Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | **FEDERAL TAX SUITS** |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**CV10-04849 JHN(PLAX)**

FOR OFFICE USE ONLY:    Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No  ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange | Switzerland<br>Sweden |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date June 30, 2010

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |