1   Ramon Lopez (CA State Bar #86361)
    rlopez@lopezmchugh.com
2   Jason Ochs (CA State Bar #232819)
    jochs@lopezmchugh.com
3   Lopez McHugh, LLP
    100 Bayview Circle, Ste. 5600
4   Newport Beach, CA 92660
    Telephone: 949.737.1501
5   Facsimile: 949.737.1504

6   William Audet (CA State Bar #117456)
    waudet@audetlaw.com
7   Jason T. Baker (CA State Bar #212380)
    jbaker@audetlaw.com
8   AUDET & PARTNERS, LLP
    221 Main Street, Suite 1460
9   San Francisco CA 94105
    Telephone: 415.982.1776
10  Facsimile: 415.568.2556

11  *Co-Lead Counsel for Plaintiff*
    *and the Proposed Class*
12  *(Additional Counsel on Signature Page)*

13

14

15              **UNITED STATES DISTRICT COURT**

16              **CENTRAL DISTRICT OF CALIFORNIA**

17

18  Jason M. Yamada, D.D.S., on behalf of      )
    himself and others similarly situated,      )   No. CV10-04849 JHN (PLAX)
19                                              )
                                                )
20                              Plaintiff,       )   FIRST AMENDED CLASS ACTION
                                                )   COMPLAINT FOR DECLARATORY
21          v.                                  )   RELIEF, DAMAGES, INJUNCTIVE
                                                )   RELIEF AND RESTITUTION
22  Nobel Biocare Holding AG; Nobel Biocare     )
    AB Nobel Biocare USA, LLC. and DOES         )
23  1 though 50,                                )   JURY TRIAL DEMANDED
                                                )
24                              Defendants.      )
                                                )
25                                              )
                                                )
26                                              )
27

28

                                        1
                    **First Amended Class Action Complaint**

## NATURE OF THE CASE

1.      Defendants in this case manufacture, sell and distribute seriously defective dental implants.  Unlike many other dental implants, NobelDirect implants are marketed to general dentists for restorative functional and cosmetic use in the "smile zone" of the patient in an attempt for NobelDirect to expand beyond customary dental implantologists and break into the lucrative general dentistry market.

2.      NobelDirect dental implants have a unique and patented One-Piece, Tapered design that not only fails to correct the dental issues for which they are implanted, but also causes complications including bone loss, bone resorption, lack of implant osseointegration, gingival retraction, gingival pitting with metallic discoloration and/or failed and failing implants.

3.      Because they are the result of the defective design, the complications occur regardless of the training, experience and level of skill of the implanting dentist.

4.      These complications, and the failure of the implants to work properly for their intended purpose, leads dentists no choice but to perform surgery themselves to remove the NobelDirect implants, or to refer patients to a surgical specialist to remove the implants.

5.      The insertion of an ineffective, defective and damaging dental implant leads to disappointed, concerned and questioning patients who have suffered injury due to the placement and subsequent failure of a NobelDirect implant.  These patients have sought and will continue to seek redress and dental restoration from the dentists who performed the original implant surgery.

6.      The proposed class in this case is comprised of dentists throughout the United States who implanted NobelDirect implants.

7.      Plaintiff and the proposed class of dentists did not know, and had no way of knowing, that the NobelDirect implants were defectively designed, that incorrect insertion protocols were promoted, that they would damage their patients and would need to be surgically removed.

8.      Despite the fact that they were sold a defective product by Nobel, the Dentists need to address the needs of their patients and mitigate the harm that the implants have caused and will cause to their patients, and mitigate the loss of goodwill to their dental practices caused by the placement of the defective implant.  They must do this by removing the implants themselves or referring their

1    patients to a dental surgeon for restoration of the failed or removed implant with a two-piece implant

2    with newly fabricated crown, often covering all or part of the costs of these procedures themselves.

3        9.    It is neither practical nor efficient for each dentist who implanted the defective

4    NobelDirect implants to sue the Nobel defendants for damages and indemnity for the repair and

5    restoration required and necessary for each patient who already has injury because of the implant's

6    defects, and every patient whose NobelDirect injury inevitably arises in the future.

7        10.    Plaintiff, on behalf of himself and a class of dentists similarly situated, asks the Court

8    for declaratory relief, in the form of a declaration that NobelDirect implants were defectively

9    designed, that they cause certain injury in patients, including the need for the implants to be removed,

10    and that Plaintiff and the Class are entitled to indemnification and reimbursement of all damages

11    incurred as a consequence of such removals.

12        11.    Plaintiff additionally asks the Court to declare that Defendants breached implied and

13    express warranties, fraudulently misrepresented their products and engaged in unfair business

14    practices.

15                                **PARTIES**

16        12.    Plaintiff Jason M. Yamada, D.D.S., is a citizen of California with his principal place

17    of business in Torrance, California. Dr. Yamada attended a NOBEL promotional symposium in

18    2004 and, subsequently, Dr. Yamada implanted dozens of NobelDirect dental implants between 2004

19    and 2005. At least a dozen of Dr. Yamada's patients have had implants that have failed or are

20    failing, requiring his patients to undergo surgical removal of the implants, reconstruction,

21    replacement, and continued monitoring. In order to mitigate damage to his patients' health and

22    welfare and to mitigate damage to his dental practice's goodwill, Dr. Yamada has repaired and will

23    repair the damage free of charge, including paying out of pocket for expenses and staff and

24    professional time involved with the repair procedures.

25        13.    Defendant Nobel Biocare Holding AG is a limited liability company incorporated

26    under the laws of Switzerland with its principal place of business in Zurich, Switzerland.

27        14.    Defendant Nobel Biocare AB is a limited liability company incorporated under the

28    laws of Sweden with its principal place of business in Gothenburg, Sweden.

3

**First Amended Class Action Complaint**

15.      Defendant Nobel Biocare USA, LLC is a limited liability company incorporated under the laws of the State of Delaware with its principal place of business in Yorba Linda, California. Upon information and belief, relevant decisions to market the NobelDirect Implant to General Dentists, and to conceal the fact that the NobelDirect implants were defective were made in California by agents and employees of Nobel Biocare USA, LLC.

16.      Defendants are collectively referred to herein as "NOBEL."

17.      NOBEL concentrates on the development, production and marketing of dental implants, crowns and bridges as well as veneers and laminates as dental prostheses.

18.      NOBEL has four production centers in Sweden and the USA and its own sales organizations in 33 countries.

19.      NOBEL has a world market share of approximately 35 percent for dental implants.

20.      At all times relevant to this action, NOBEL was engaged in the business of designing, licensing, manufacturing, distributing, selling, marketing and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, the dental implant known as and sold under the trade name NobelDirect.

21.      NobelDirect is a titanium single-piece dental implant.

22.      NobelDirect was launched in 2004 and sold to practitioners in the United States.

23.      The implant was, according to Nobel, designed to be screwed directly into the jawbone without having to first retract the gingival covering the alveolar crest bone.

24.      NOBEL marketed the Nobel Direct as a dental implant that was easy to install for the practitioner and therefore suitable for any dentist.

/ / /

/ / /

First Amended Class Action Complaint

## JURISDICTION AND VENUE

25.     This is a class action.

26.     Members of the proposed Plaintiffs' class are citizens of California and other states different from the home state of Defendants.

27.     Upon information and belief, the aggregate claims of individual Class Members exceed $5,000,000, exclusive of interest and costs.

28.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332(d).

29.     Defendants, through their business of manufacturing, distributing, selling, and leasing NobelDirect implants to and in California have established sufficient contacts in this district such that they are subject to personal jurisdiction here.  Defendants are deemed to reside in this district pursuant to 28 U.S.C. §1391(a).

## APPLICABLE LAW

30.     California State law applies to all claims in this action.

## ALLEGATIONS

31.     The NOBEL Defendants designed, developed, tested, manufactured, distributed, marketed, promoted, instructed and sold the NobelDirect implants to Plaintiff and the class.

32.     The NobelDirect implant was launched in 2004.  It was claimed by Nobel to be simple to use by nonspecialist dentists and to result in essentially no incidence of "bone reabsorption", where an implant is reabsorbed by the patient's bone.   The implant is recommended and marketed by defendants for placement without the need for a surgical flap, followed by immediate loading of the implant.  The "Minimally invasive", flapless implantation and the one-piece "ease of use" Nobel marketed for the NobelDirect was used as a distinct marketing point of advantage over competitor implants.

33.     Plaintiff and the Class bought NobelDirect implants directly from Nobel.  They relied on Nobel's representations that the one-piece implants were easy to use, could be safely implanted with flapless implantation, and resulted in less bone loss than competitor implants.

34.     In fact, when implanted as directed, the long, narrow, non-linear tapered design of the implant leads to an excessively high amount of marginal bone loss surrounding the implant. This occurs as a result of the defective design of the implant, and is not a result of dentist-specific causes.

35.     One study has concluded that after approximately one year, over 10% of NobelDirect implants placed had already completely failed- i.e. they had to be entirely removed from the patient's jaw. The study concluded that this was an unusually high failure rate that led to "quite unacceptable clinical outcomes". This did not even take into account the number of implants that had serious complications but that had not yet been removed.

36.     Another study entitled "Short-term clinical results for NobelDirect implants: a retrospective multicentre analysis" found "extensive marginal bone loss" in more than 1/3 of the NobelDirect implants evaluated. The study concluded that NobelDirect implants had "a poor clinical outcome" when implanted as directed.

37.     Plaintiff and the class had no knowledge, and no effective way to know, that the NobelDirect implants were defectively designed and would cause damage to their patients, and would fail, requiring surgical removal from the patients' jaws.

**Nobel Had Exclusive Knowledge Of The Defect.**

38.     All of NobelDirect implants have the same defective design.

39.     NOBEL had superior and exclusive knowledge of the defect, and knew that the defect was not known or reasonably discoverable by the Plaintiff and Class members prior to their purchase and/or implantation of the NobelDirect implants.

40.     Only NOBEL had access to information about the risk of implanting the NobelDirect implants, including the dangers of implanting as directed: loaded directly without using surgical flaps.

41.     NOBEL failed to disclose, at and after the time of purchase that the NobelDirect implants were defective and not fit for their intended purpose.

42.     Each NobelDirect implant comes in an identical sealed tube with labeling on the outside. NOBEL has placed warning or instruction labels (for various reasons), in the form of a sticker, on such tubes for *other* NOBEL implants, but at no time did NOBEL place any sticker or

1    language warning plaintiff or members of the proposed class that the NobelDirect implants were

2    defective, that they had been found to have an extraordinarily high rate of failure, that they should

3    not be loaded directly nor implanted without the use of surgical flaps, that they had not been

4    adequately tested and/or that the implant was a prototype.

5       43.        Each package label was defective and contained material omissions, including that

6    they:

7           a.   Failed to warn of the increased risk of implant failure due to the increased, non-linear

8                tapered implant design causing increased surrounding bone wall compression

9                pressures at the time of insertion;

10          b.   Failed to warn of the increased risk of implant failure from over-torquing the implant

11               at the time of insertion;

12          c.   Failed to warn of increased risk of implant failure from heat transfer during abutment

13               grinding down the implant body to surrounding bone wall;

14          d.   Failed to warn of the increased risk of the use of flapless surgery for insertion of the

15               implant;

16          e.   Failed to warn of the increased risk of implant failure due to conducted vibrations

17               down the body of the implant during abutment grinding causing micromotion of the

18               implant against the surrounding bone;

19          f.   Failed to warn of the increased risk of implant failure due to the immediate functional

20               loading of the implant;

21          g.   Failed to warn of the increased risk of implant failure due to increased marginal bone

22               loss surrounding the implant;

23          h.   Failed to warn of the increased risk of cosmetic failure due to gingival retraction;

24          i.   Failed to warn of the increased risk of cosmetic failure from metallic discoloration of

25               the gingival tissue;

26          j.   Failed to warn of an overall unacceptable and abnormally high failure rate.

27      44.        Whether a dental implant will work for its intended purposes, and whether, when

28    implanted as directed, it will have an extraordinarily high risk of bone resorption and failure is a fact

7

**First Amended Class Action Complaint**

1    that would be considered material by a dentist in deciding whether to purchase or use a dental

2    implant.

3        45.        Had Plaintiff and other class members known of the implant's defect, they would not

4    have purchased or implanted the NobelDirect implants.

5        46.        Plaintiff and the class further expect and assume Defendants will not sell implants

6    with known defects, and will immediately and properly disclose any such defect to its dentists when

7    they learn of the defect.

8        47.        Plaintiff and the class expect and trusted that Defendants will properly design their

9    implants and would effectively train dentists in how to surgically implant the implants in order to

10    avoid the risk of bone reabsorption and other complications that will result in the failure and removal

11    of the implant.

12        48.        Plaintiff and the class relied on NOBEL's representations that the NobelDirect

13    implants could be implanted safely and effectively – even by general (nonspecialist) dentists --

14    without surgical flaps.  Nobel made these representations repeatedly and consistently throughout the

15    class period because the ease of implantation – direct loading without use of surgical flaps - was a

16    primary marketing point for the NobelDirect implants.

17    **Nobel Has Misled Dentists Regarding the Implant's Effectiveness and Defects.**

18        49.        NOBEL has actively concealed the implant defect from Plaintiff and Class members.

19        50.        Upon information and belief, NOBEL failed to release internal information regarding

20    the NobelDirect's propensity to cause abnormally high rates of bone resorption with gingival

21    retraction and discoloration and other complications leading to implant failure.  This deception and

22    withholding of internal information, complaints and testing continues to the present day.

23        51.        NOBEL marketed the NobelDirect implants as safe and effective for use by general,

24    non-specialist dentists without resorting to a surgical flap, instead promoting the use of an easier

25    gingival punch insertion site.  This marketing was knowingly and intentionally false, and was

26    intended to deceive general dentists into believing this implant was a simple effective tool they could

27    incorporate into their practices, when in fact it was a dangerously defective implant that would soon

28    have to be removed.

52.     Beginning in or about 2003, Nobel mailed and otherwise transmitted to dentists a marketing document entitled "Nobel Direct Clinical data" [the "Marketing Brochure"]

53.     The cover of The Marketing Brochure included Nobel's marketing slogan, that the NobelDirect was a "patient-friendly flapless procedure".

54.     The cover of The Marketing Brochure also claimed the NobelDirect as "the one implant that is anatomically correct in design and biologically correct in action."

55.     The Marketing Brochure advertised "reduced bone less" and "less discomfort" as a benefit of the NobelDirect, and touted the "one-piece ease-of-use" and minimally invasive (flapless) Surgical procedure.

56.     The marketing brochure also represented that implanting NobelDirects "was [a] common and safe dental procedure".

57.     The Marketing Brochure was widely disseminated to the class, and its message, that the NobelDirect was safe, easy to use, implantable through a minimally invasive flapless procedure, and that it led to less bone-loss and less discomfort, was transmitted to each class member.

58.     Nobel told Plaintiff and the class, including in a document entitled "precautions and warnings" that NobelDirect implant techniques "have normal contraindications and risks." This was false and deceptive and NobelDirect knew or should have known that it was false.

59.     As a result of NOBEL'S practices, and in reliance on Nobel's misrepresentations of the product described above, Plaintiff and Class members purchased and implanted the NobelDirect implants which they otherwise would not have purchased. Because of NOBEL'S practices, Plaintiff and the class members now face a flood of complaints from injured dental patients who have needed, and will need, immediate intervention to remove the defective implants.

## CLASS ACTION ALLEGATIONS

60.     Plaintiff brings this action on behalf of themselves and a class of persons similarly situated as members of a proposed Plaintiff Class pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3). The action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of those provisions.

61.    The Class is initially defined as follows:

> All dentists in the United States who have implanted NobelDirect implants.

Excluded from the Class are NOBEL; any affiliate, parent, or subsidiary of NOBEL; any entity in which NOBEL has a controlling interest, any officer, director, or employee of NOBEL; any successor or assign of NOBEL; anyone employed by counsel for Plaintiff in this action; and any Judge to whom this case is assigned as well as his or her immediate family.

62.    Claims for personal injury are specifically excluded from the class.

63.    <u>Numerosity:</u> NOBEL has sold thousands of NobelDirect implants in the United States, a substantial portion of those occurring in California. Class members number in the thousands, and are far too numerous to be individually joined in this lawsuit.

64.    <u>Existence and Predominance of Common Questions:</u> Common questions of law and fact exist as to all members of the class and predominate over questions affecting only individual class members. These common questions include the following:

    a.   whether NobelDirect implants were defectively designed;

    b.   whether NOBEL knows about the defect and, if so, how long NOBEL has known of the defect;

    c.   whether the defective nature of the NobelDirect implant constitutes a material fact to the reasonable objective consumer (i.e. the dentists);

    d.   whether NOBEL has and had a legal duty to disclose the defective nature of the implants to Plaintiff and Class members;

    e.   whether NOBEL breached implied or expressed warranties;

    f.   whether NOBEL has engaged in unfair or fraudulent business practices in violation of Business and Professions Code section 17200 *et seq.*, as alleged in this complaint;

g.    whether Plaintiff and the other class members are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction or declaratory relief.

65.    Typicality: Plaintiff's claims are typical of the claims of the class, because, among other things, Plaintiff purchased and implanted NobelDirect implants which contain the same defect found in all other NobelDirect implants.

66.    Adequacy: Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the members of the class he seeks to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously. The interests of members of the class will be fairly and adequately protected by Plaintiff and his counsel.

67.    Superiority: The class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each class member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against NOBEL economically feasible. Even if class members themselves could afford such individualized litigation, the court system could not. In addition to the burden and expense of managing myriad actions arising from the implant defect, individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

68.    In the alternative, the class may be certified because:

a.    the prosecution of separate actions by the individual members of the class would create a risk of inconsistent or varying adjudication with respect to individual class members which would establish incompatible standards of conduct for NOBEL;

b.    the prosecution of separate actions by individual class members would create a risk of adjudication with respect to them which would, as a practical matter, be dispositive of

the interests of other class members who are not parties to the adjudication, or
substantially impair or impede their ability to protect their interests; and

c.   NOBEL has acted or refused to act on grounds generally applicable to the class,
thereby making appropriate final and injunctive relief with respect to the members of
the class as a whole.

## EQUITABLE TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

69.      The running of any statute of limitations has been tolled due to Defendants' fraudulent concealment. By failing to disclose a known defect to Plaintiff and the Class, and misrepresenting the nature of their product as safe for its intended use, Defendants actively concealed from Plaintiff and the Class the true risks associated with the NobelDirect implants.

70.      Plaintiff and the Class could not have reasonably known or have learned of the manufacturing defect alleged herein and that those risks were a direct and proximate result of Defendants' acts and omissions.

71.      In addition, Defendants are estopped from relying on any statute of limitations because of their fraudulent concealment of the defective nature of the implants. Defendants were under a duty to disclose the true information about their product and they failed in that duty to Plaintiff and the Class.

72.      Plaintiff and the Class had no knowledge that Defendants were engaged in the wrongdoing alleged herein due to the acts of fraudulent concealment alleged herein.

73.      In addition, in or about February 25, 2008, Nobel mailed a letter to its customers affirmatively representing that "there is no potential hazard associated with the continued use of the NobelDirect. . . . ." . Additionally, under "adverse effects", Nobel said "implant techniques have normal contraindications and risks." These statements were false and were intended to and did fraudulently conceal from plaintiffs and the class the defect known to Defendants.

/ / /

## FIRST CLAIM FOR RELIEF
### (For Declaratory Relief Pursuant to 28 U.S.C. §2201)

74.     Plaintiff re-alleges and incorporates by reference each allegation set forth as if fully set forth herein and further allege as follows.

75.     An actual controversy, over which this Court has jurisdiction, has arisen and now exists between the parties relating to the legal rights and duties of Plaintiffs and Defendants for which Plaintiffs desire a declaration of rights and duties.

76.     A declaratory judgment is necessary in that Plaintiffs contend, and Defendants deny, that Defendants, and each of them, bear the legal responsibility for the defective implants and the damage they have caused and continue to cause.

77.     Plaintiff and the Class have had complaints from patients who have been the victims of NobelDirect implants.  These patients have complained and sought help from plaintiff and the class – i.e. their dentists – and they will continue to do so as the NobelDirect implants continue to fail and require removal.

78.     Plaintiff and the Class cannot afford to simply ignore their patients' complaints of failed or failing implants, refuse treatment or remedy, and refer those patients to NOBEL for redress for their injury.  To do so would mean catastrophic injury to their dental practices and the reputation and word-of-mouth which are critical to the dental practices of Plaintiff and the Class.  It would also mean abandoning their duty of care to their patients, and failing to prevent further damage caused by the defective implants.

79.     Instead, Plaintiff and the class, in order to mitigate the damage to the health and welfare of their patients, to fulfill their duties and obligations as the care provider for their patients, and to mitigate damage to their own practice, must help patients cure or stop the damage inflicted by the defective implant, including by removing the implant or by referring patients to another dentist who can remove the implant, and paying for the costs associated with that procedure and additional procedures required for restoration.

80.     Money damages are insufficient to compensate for the ongoing nature of this problem, including that Plaintiff and the class will continue to have patients who come to them to repair the damage Nobel has caused.

13

First Amended Class Action Complaint

1    81.    Plaintiff, on behalf of himself and the proposed class, seeks declaratory relief from

2    the Court including in the form of a declaration that NobelDirect implants are defectively designed,

3    that they lead to extraordinary bone resorption and/or consequential failure of implants that requires

4    removal, that Plaintiff and the Class are not liable for this defect, Defendants are, and Plaintiff and

5    the class  are entitled to full indemnification from NOBEL for any time and expense lost as a

6    consequence of this defect.

7                            **SECOND CLAIM FOR RELIEF**
                                   **(Implied Indemnity)**

8    82.    Plaintiff re-alleges and incorporate by reference each allegation set forth as if fully set

9    forth herein and further allege as follows.

10   83.    Because manufacturers are held strictly liable for design defects, Plaintiff, on behalf

11   of himself and the proposed class, seeks indemnity from NOBEL, the manufacturer, for damages

12   Plaintiff and the class have suffered and will suffer as a consequence of NOBEL'S defectively

13   designed implant.

14   84.    Plaintiff additionally seeks a declaration that Nobel has a duty to indemnify plaintiff

15   and the class as against future damage plaintiff and the class suffer as a result of Nobel's defectively

16   designed implant.

17

18                            **THIRD CLAIM FOR RELIEF**
                                **(Breach of Express Warranty)**

19   85.    Plaintiff re-alleges and incorporates herein by reference each allegation set forth as if

20   fully set forth herein and further allege as follows.

21   86.    Defendants expressly warranted in their marketing material and otherwise, including

22   in the Marketing Brochure, that the NobelDirect implants would "ensure long-term beautiful

23   esthetics"

24   87.    In addition, Defendants also expressly warranted that the implants were safe and

25   effective and proper for their intended use.

26   88.    Plaintiff and the Class reasonably relied on the skill and judgment of Defendants and

27   on said express warranties.  But for Defendants' conduct alleged herein and their breach of express

28   warranty, Plaintiff and the Class would not have suffered the damages and losses alleged herein.

89.     The NobelDirect implant was unaccompanied by warnings of its defective properties that were either known or knowable at the time of distribution.

90.     The warranty and representations were untrue in that the product was unsuited for the use for which it was intended.

91.     After the defective nature of the product and the fact that the warranty and representations were false were ascertained, DEFENDANTS were notified of the breach of said warranty.

92.     As a direct and proximate result of Defendants' breach of express warranty, the Plaintiff and the Class have sustained, are sustaining, and will sustain damages and losses as alleged herein.  Plaintiff and the class seek damages for breach of warranty and a declaration from the Court that Nobel did expressly warrant its NobelDirect implants; such a declaration will help clarify the legal rights and responsibilities of the parties going forward.

**FOURTH CLAIM FOR RELIEF**
**(Breach of Implied Warranty)**

93.     Plaintiff re-alleges and incorporates herein by reference each allegation set forth as if fully set forth herein and further allege as follows.

94.     Defendants impliedly warranted that the NobelDirect implants were properly designed, developed, tested, manufactured, distributed, marketed, and sold and that the designs and materials were proper and of first-class and workmanlike quality.

95.     Plaintiff and the Class relied upon said warranties and believed that said designs, work, and materials were of first-class workmanlike quality and fit for the intended use and purpose of a dental implant..

96.     Defendants breached said warranty by designing, developing, manufacturing, distributing, marketing, and selling the NobelDirect implants, which were defective and not fit for their intended use.

97.     Defendants provided defective implants and failed to properly inspect, test, and identify the NobelDirect implant's defects.

98.     But for Defendants' conduct alleged herein and their breach of implied warranty, Plaintiff and the Class would not have suffered the damages and losses alleged herein.

99.     As a direct and proximate result of Defendants' breach of implied warranty, the Plaintiff and the Class have sustained, are sustaining, and will sustain damages and losses as alleged herein.

100.     Plaintiff and the class seek damages for breach of implied warranty and a declaration from the Court that Nobel did impliedly warrant its NobelDirect implants; such a declaration will help clarify the legal rights and responsibilities of the parties going forward.

**FIFTH CLAIM FOR RELIEF**
**(Unfair Business Practices: Violation California**
**Bus. & Prof. Code §§ 17200, *et seq*).**

101.     Plaintiff, on behalf of himself and all others similarly situated, realleges and incorporates by reference each allegation set forth as if fully set forth herein and further alleges as follows.

102.     NOBEL'S acts and practices, as alleged in this complaint, constitute unfair and/or fraudulent business practices, in violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*.

103.     California Business and Professions Code § 17200, *et seq* prohibits acts of "unfair competition," which includes any "unfair" business practices.

104.     NOBEL engaged in unfair business practices by failing to disclose to Plaintiff and the Class the defects inherent in the NobelDirect implants, and, among other things:

    a.  Engaging in conduct where the utility of that conduct is outweighed by the gravity of the consequences to Plaintiff and other members of the class;

    b.  Engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and other members of the class

105.     As a direct and proximate result of NOBEL'S unfair business practices as alleged herein, Plaintiff and Class members have suffered injury in fact and lost money or property, in that they purchased implants that they otherwise would not have. Plaintiff and proposed Class Members are have also suffered damages as a consequence of NOBEL'S unfair conduct, including that they have had to conduct implant removals and pay for incidental expenses, or pay for patients' removals

1    by other practitioners, in order to mitigate damage to the health and well being of their patients and

2    the further loss of goodwill to their business.

3        106.      Meanwhile, NOBEL has sold more implants than it otherwise could have, unjustly

4    enriching itself thereby.

5        107.      Plaintiff and Class members are entitled to equitable relief, including restitutionary

6    disgorgement of all profits accruing to NOBEL because of its unfair, fraudulent, and deceptive

7    practices.  Plaintiffs and the class also seek declaratory relief, and a permanent injunction enjoining

8    NOBEL from its unfair, fraudulent and deceitful activity.

9    **SIXTH CLAIM FOR RELIEF**
**(Fraudulent Business Practices: Violation California**

10   **Bus. & Prof. Code §§ 17200, *et seq*).**

11       108.      Plaintiff, on behalf of himself and all others similarly situated, incorporates by

12   reference each allegation set forth as if fully set forth herein and further alleges as follows.

13   NOBEL'S acts and practices, as alleged in this complaint, constitute fraudulent business practices, in

14   violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*.

15       109.      California Business and Professions Code § 17200, *et seq* prohibits acts of "unfair

16   competition," which includes any "fraudulent" business practices.

17       110.      NOBEL engaged in fraudulent business practices by engaging in conduct that was

18   and is likely to deceive a reasonable consumer.

19       111.      Plaintiff and the Class reasonably expected the NobelDirect implants to be free of

20   serious defects.  They also reasonably expected that, when implanted as directed, the implants would

21   be safe and effective.

22       112.      In failing to disclose the defects in the NobelDirect implants at the time of sale, and

23   in giving the false impression that the implants were safe and easy for general dentists to implant

24   without a surgical flap, NOBEL knowingly and intentionally and repeatedly concealed material facts

25   and breached their duty not to conceal facts.

26       113.      As a direct and proximate result of NOBEL'S fraudulent practices, Plaintiff and the

27   Class have suffered and will continue to suffer damages.

28

**First Amended Class Action Complaint**

114.     NOBEL has been unjustly enriched and should be required to make restitution to Plaintiff and the Class pursuant to California Business and Professions Code Sections 17203 and 17204, and should further be require to indemnify Plaintiff and the class against damages claimed by patients whose implants have failed due to the defective nature of the implant.

115.     Plaintiffs and the class also seek declaratory relief, and a permanent injunction enjoining NOBEL from its unfair, fraudulent and deceitful activity

## PRAYER

WHEREFORE, Plaintiff, on his own behalf and on behalf of the Class, prays for judgment as follows:

    a.  For an order certifying the Class and appointing Plaintiff and his counsel to represent the Class;

    b.  For an Order Declaring NOBEL liable for the defects in their NobelDirect implant and requiring NOBEL to indemnify Plaintiff and the Class for all damages suffered as a consequence of the defective implants;

    c.  For an order awarding compensatory damages to the Plaintiff and the class;

    d.  For an order awarding Plaintiff and the members of the Class restitution, or other equitable relief as the Court deems proper;

    e.  For an order enjoining NOBEL from continuing to engage in unfair business practices, as alleged herein, including precluding the further sale of NobelDirect implants;

    f.  For an order awarding Plaintiff and the members of the Class pre-judgment and post-judgment interest;

    g.  For an order awarding Plaintiff and the members of the Class reasonable attorneys' fees and costs of suit, including expert witness fees; and

    h.  For an order awarding such declaratory and other relief as this Court may deem just and proper.

DATED: October 8, 2010

By: _____

    Ramon Lopez
    Jason Ochs
    Lopez McHugh, LLP
    100 Bayview Circle, Ste. 5600
    Newport Beach, CA 92660

**First Amended Class Action Complaint**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Telephone: 949.737.1501
Facsimile: 949.737.1504

William M. Audet
Audet & Partners LLP.
221 Main Street, Suite 1460
San Francisco CA 94105
Telephone: 415.982.1776
Facsimile: 415.568.2556

Stephen D. Ochs, M.D., J.D.
805 South Reserve St.
Missoula, MT 59801
Telephone: 406.549.6600
Facsimile: 406.549.1511

**First Amended Class Action Complaint**

# PROOF OF SERVICE

*Case No. CV10-04849 JHN (PLAX) – Gadolinium Medical Cases*

| | |
|---|---|
| UNITED STATES DISTRICT COURT | ) |
| | ) ss.: |
| CENTRAL DISTRICT OF CALIFORNIA | ) |

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 100 Bayview Circle, Suite 5600, Newport Beach, CA 92660.

On October 21, 2010, pursuant to the Court's: Order Authorizing Electronic Filing dated August 2, 2010, I served a copy of the foregoing documents described as follows: **FIRST AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF, DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION**

on the interested parties by:

__X__ SUBMITTING: an electronic version of the document(s) via file transfer protocol (FTP) to CM/ECF Filing System through the upload feather at https://ecf.cacd.uscourts.gov.

____ MAIL as follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on the same day with postage thereon fully prepaid at Newport Beach, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation ate or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 21, 2010, Newport Beach, California.

BROOKE MEYERS

1

PROOF OF SERVICE

## SERVICE LIST

Jason T. Baker
William M. Audet
Audet & Partners LLP
221 Main Street Suite 1460
San Francisco, CA 94105
P: 415.568.2555
F: 415.568.2556
E: jbaker@audetlaw.com
ATTORNEY FOR PLAINTIFF JASON M. YAMADA D.D.S., on behalf of himself and others similarly situated

Stephen D. Ochs
Stephen D. Ochs MD JD
805 South Reserve Street
Missoula, MT 59801
P: 406.549.6600
F: 406.549.1511
E: sdo@stephenochs.com
ATTORNEY FOR PLAINTIFF JASON M. YAMADA D.D.S., on behalf of himself and others similarly situated

Eric Y. Kizirian
Lewis, Brisbois, Bisgaard and Smith LLP
221 North Figueroa Street Suite 1200
Los Angeles, CA 90012
P: 213.580.3981
F: 213.250.7900
E: kizirian@lbbslaw.com
ATTORNEY FOR DEFENDANTS NOBEL BIOCARE HOLDING AG; NOBEL BIOCARE AB, NOBEL BIOCARE USA, LLC

2